8265. GEORGIA RAILWAY & POWER CO. *v.* BELOTE.

1. The instruction to the jury that the plaintiff charged that the defendant company was negligent because "it had no headlight" on its electric-car, where the plaintiff's petition alleged that the headlight on the car was not lighted, and there was testimony that there was no light on the car, was not a material error. It could not have misled the jury; and it was authorized by testimony, admitted without objection, which tended to show the absence of any light (including a headlight).

2. There was no error in instructing the jury, by way of illustration, to the effect that if the plaintiff was otherwise entitled to recover, and it appeared that one third of the negligence which produced the injury was attributable to her, and the remaining two thirds was attributable to the defendant, the amount of the plaintiff's recovery should be diminished by one third. Where the negligence of the plaintiff equals or exceeds that of the defendant, there can be no recovery; but if the negligence of the plaintiff is less than that of the defendant, and the plaintiff is otherwise entitled, under the pleadings and the testimony, to recover against the defendant, the total amount of damages in dollars and cents should be diminished in proportion to the amount of default attributable to the plaintiff.

3. The remaining grounds of the motion for a new trial are without substantial merit.

DECIDED JULY 5, 1917.

Action for damages; from Fulton superior court—Judge Pendleton. June 23, 1916.

*Colquitt & Conyers,* for plaintiff in error.

*Westmoreland & Westmoreland, F. A. Hooper,* contra.

WADE, C. J.   It is conceded in the brief of counsel for the plaintiff in error that the plaintiff "introduced some testimony to substantiate her case;" and it appears from an examination of the brief of evidence that this admission was not improvidently made. The general grounds of the motion for a new trial are therefore without merit.

1.   The first ground of the amendment to the motion for a new trial is that the court instructed the jury that the plaintiff "charges that the defendant company was negligent in three particulars: First, it was negligent because it had no headlight.   Second, it was negligent because no notice was given, by the ringing of the gong or otherwise, of the approach of the car.   Third, that the headlight was not fully illuminated."   It is insisted that this charge was error because it submitted an issue not made by the pleadings, in that the absence of a headlight was not therein alleged as an act of negligence.   The petition (paragraph 6) asserts that "it was after seven o'clock and was growing dark, the headlight of said car was not lighted, and this negligence practically kept the employees of defendant company from seeing your petitioner, and the failure of defendant from having said headlight lighted permitted the car to come up unawares on your petitioner; whereas, had the flash of the headlight been present, petitioner would have had time to jump back and thereby avoid the injury, even though the car was being operated at a high rate of speed." This was an allegation that at the time of the injury there was no headlight *in operation* on the car, and was equivalent *in this case* to an allegation that there was no headlight apparatus attached to the car at all.   It would of course be immaterial whether a headlight was on the car or not, if it was unlighted and was thus performing in no degree whatever the usual and proper functions of such an attachment.   If the apparatus was actually attached to the car, but was furnishing absolutely no light whatever, or was, as stated, "not lighted," so far as the plaintiff was concerned,—that is, was not illuminating the surrounding darkness and thus enabling the motorman to discover more readily her presence and danger, or not furnishing such a brilliant and flashing beam of light as might attract her attention, even upon a well-lighted street, and thus warn her of the approach of danger, there was in effect no headlight on the car.   The precise practical meaning of

the language in the petition that the headlight was not lighted, and in the instruction of the court that negligence was predicated upon the absence of a headlight, would be the same under the allegations in this petition and also under the proof submitted. There was testimony to sustain the allegation that the headlight of the car was not lighted, though apparently there was none intended to show the entire absence of the apparatus generally employed to furnish such a light. The substantial issue raised by the pleadings, and supported by some proof, was whether or not the car was actually supplied with a light at the end which struck the plaintiff, so that the driver could have seen her with the help of its rays, and she could also have been warned thereby, and thus by the combined efforts of both the motorman and the plaintiff, or by the efforts of one of them only, after the imminence of the danger had been disclosed to the one or brought to the attention of the other, the collision could have been avoided.

In the testimony of the plaintiff appears this statement: "When I saw the car there, there wasn't any light at all in the front of the car; no headlight; I am very sure of that." Likewise, the sister of the plaintiff testified as follows: "As my sister and I started across there, I didn't see any light at all on the car that struck me and my sister." And again, she said, "I didn't notice any light on the front of the car. . . There was no light on the front of the car." It may be assumed that it was not the intention of the plaintiff to allege in her petition the absence of the apparatus usually employed to furnish a light in front of a moving electric-car and commonly called a "headlight," but that she intended to allege merely what she did allege,—that "the headlight of said car was not lighted, . . and the failure of the defendant from having said headlight lighted permitted the car to come up unawares on your petitioner," etc. So, too, the language of the trial judge, instructing the jury that one of the grounds upon which the plaintiff alleged negligence was that the defendant company "had no headlight" on its car, was undoubtedly intended to convey to the jury the same idea that there was no light or lighted headlight on the front of the car. If, however, this excerpt be subjected to the meticulous criticism suggested by this ground of the motion for a new trial, it is enough to say that the testimony of the plaintiff and her sister above quoted, if

taken in its literal sense, authorized the precise charge of the court, since they both testified that there was *no light* (which would include a headlight), and the plaintiff even said no "headlight," on the front of the car; and this evidence was admitted without objection. "Where evidence is admitted without objection, although there be no allegation in the declaration authorizing it, the court may properly charge the jury as to its legal effect; and where a party permits evidence to go to the jury without objection, and the jury find on such evidence, the losing party is not entitled to a new trial on the ground that the evidence does not correspond with the declaration, if the declaration could, by amendment, have been made to cover the evidence. *Georgia Railroad* v. *Lawrence,* 74 *Ga.* 534; *Central Ry. Co.* v. *Attaway,* 90 *Ga.* 656, 659 [16 S. E. 956]. 'Although the pleadings may not present the whole issue, yet if it be fully made by the evidence without objection, it is too late, after verdict for the losing party, to make that the ground of a motion for a new trial.' *Howard* v. *Barrett,* 52 *Ga.* 15. See also *Seabrook* v. *Brady,* 47 *Ga.* 651, 659; *Savannah, Florida & Western Ry. Co.* v. *Grogan,* 117 *Ga.* 461 (43 S. E. 701); *Haiman* v. *Moses,* 39 *Ga.* 708; *Field* v. *Martin,* 49 *Ga.* 268, 271; *M. E. Church* v. *Dudley Co.,* 137 *Ga.* 68 (6), 69 (72 S. E. 480); *Artope* v. *Goodall,* 53 *Ga.* 318, 323. These rulings are based upon the principle that if objection were made to the testimony upon the ground that it was not authorized by the pleadings, the pleadings might have been so amended as to authorize the introduction of the testimony." *Gainesville &c. Railroad Co.* v. *Galloway,* 17 *Ga. App.* 702 (4) (87 S. E. 1093). There is therefore no substantial merit in this ground of the motion; and this is likewise true of the 10th ground, which complains that the court erred in submitting to the jury, as an allegation of negligence upon which a verdict for the plaintiff could have been predicated, "the allegation that the defendant was negligent because it had no headlight."

The 11th ground of the amendment to the motion for a new trial assigns error upon that portion of the excerpt from the charge above quoted which submitted to the jury, as an allegation of negligence upon which a verdict for the plaintiff could be based, "the allegation that the defendant was negligent because the headlight was not fully illuminated;" the objection being that there was no testimony in the record to authorize this instruction. Paragraph

9 of the plaintiff's petition alleged that "defendant was further negligent in operating the said street-car without having the headlight fully illuminated, it being past the time when all other street lights had become illuminated, and the said headlight being absolutely necessary for the safety of pedestrians and your petitioner." The court amply instructed the jury as to the contentions raised by the plaintiff, and there was no error in submitting for their consideration such contentions as were clearly presented by the pleadings or were authorized by testimony admitted without objection.

The 2d ground of the amendment to the motion for a new trial alleges that the court erred in the following charge to the jury: "If the evidence shows that the plaintiff was injured by the running of a car of the defendant company, as she charges she was injured, she would have the right to recover for the injuries received, for which she sues in her petition in this case, unless the defendant company shows you that its agents and servants in charge of said car exercised all ordinary and reasonable care and diligence in connection with those things which are charged to be negligence in the plaintiff's petition." It is contended that this charge was erroneous because proof of injury would not authorize a recovery "in the absence merely of proof that the agents of defendant exercised ordinary care," for the reason "that the presumption goes only to the extent of presuming negligence, and not to the extent of authorizing recovery." The Civil Code (1910), § 2780, declares that "A railroad company shall be liable for any damage done to persons, stock, or other property by the running of the locomotives, or cars, or other machinery of such company, or for damage done by any person in the employment and service of such company, unless the company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the company." By reference to the excerpt from the charge which is complained of in this ground of the motion, it will be seen that the court instructed the jury that the plaintiff "would have the right to recover for the injuries received for which she sues in her petition in this case," and section 2780, supra, declares "that a railroad company shall be liable for any damage done to persons, . . by the running of the . . cars or other machinery of the company." It is obvious that the effect of the language used by the

judge as to the right of the plaintiff to recover was identical with
that of the language employed in the statute touching the liability
of the railroad company to the plaintiff. The qualification fixed
by the statute, that a railroad company shall thus be *liable* "un-
less the company shall make it appear that their agents have ex-
ercised all ordinary and reasonable care and diligence," was an-
nexed by the court to the instruction that the plaintiff "would
have the right to *recover* for the injuries received," and for which
she sued, by the added words "unless the defendant company shows
you that its agents and servants in charge of said car exercised all
ordinary and reasonable care and diligence in connection with
those things which are charged to be negligence in the plaintiff's
petition." Immediately following this instruction the court fur-
ther said: "The presumption would be that the defendant was
negligent, but that presumption can be rebutted by any evidence
in the case. It is what is termed a rebuttable presumption; and
you may look and determine whether or not the presumption of
negligence has been rebutted in the case." The statute (§ 2780,
*supra*) provides that "the presumption in all cases" shall be
against the railroad company. The presumption referred to is of
course that the agents of the company have not in fact exercised
all ordinary and reasonable care and diligence; and the burden is
upon the defendant company to rebut that presumption by show-
ing that in fact its agents had exercised all ordinary and reason-
able care and diligence. The statute plainly declares that a rail-
road company "shall be liable for any damage done to persons,"
etc., by the running of its locomotives or cars or other machinery;
and the court simply gave this section to the jury by charging the
converse of what is therein stated, namely that the person injured
might "recover," etc. There can not in legal effect be any difference
between informing the jury that under certain circumstances or
upon certain proof being made the defendant would be liable to
the plaintiff, and in informing the jury that under the same cir-
cumstances the plaintiff might recover from the defendant, *un-
less,* in each case, certain other facts appeared.

We come now to the precise criticism urged against this excerpt
from the charge, that it was erroneous because "proof of injury
does not authorize recovery in the absence merely of proof that
the agents of defendant exercised ordinary care," since "the pre-

sumption goes only to the extent of presuming negligence, and not to the extent of authorizing recovery." By reference to the excerpt as above quoted, it will be observed that a recovery was not thereby authorized "in the absence merely of proof that the agents of defendant exercised ordinary care," but was authorized only in the event "the evidence shows that the plaintiff was injured by the running of a car of the defendant company, *as she charges she was injured*" (italics ours). That is to say, the court instructed the jury that the plaintiff could only recover in the event she was injured by the running of the cars of the defendant in the particular way or manner she charged or alleged in her petition that she had been injured. She alleged that she was injured while "she was in the exercise of ordinary care," and (considering the petition as a whole) without fault on her part, solely through certain acts of negligence on the part of the defendant. The jury were therefore instructed in this excerpt that the plaintiff would have the right to recover only in case they found from the evidence that the injury resulted, as charged in the plaintiff's petition, *solely* through the fault of the agents of the defendant, and clearly were not instructed that the presumption of negligence created by law would authorize a recovery, unless the plaintiff was injured in the manner she charged in her petition that she had been injured, which excluded any failure to exercise ordinary care on her part or any negligence contributed by her to bring about the injury. The court elsewhere fully instructed the jury as to the duty resting upon the plaintiff to exercise ordinary care, and as to the effect of a failure on her part to exercise such care, and advised them that the plaintiff could not recover if injured on account of her own negligence, or if injured by the negligence of the plaintiff as alleged by her, if by the exercise of ordinary care she could have avoided the consequences to herself of that negligence. Considering, therefore, this ground of the motion in connection with the entire charge of the court, there is no merit therein.

In the light of the entire charge, and in the absence of any denial that the court elsewhere gave proper instruction on that point, the 3d ground of the amendment to the motion, complaining that the "proof of the facts hypothetically stated" in an excerpt from the charge complained of would not authorize a recovery, because

"the additional fact must be proved of the injury to plaintiff by the negligence of the defendant," is without any substantial merit. Neither is this excerpt subject to the further criticism that it contained an expression of an opinion on the part of the court "as to the fact of damage to plaintiff."

2, 3. The 4th ground of the amendment to the motion for a new trial assigns error upon the following charge to the jury: "If you believe that the defendant's agents were guilty of two thirds of the negligence, and that the plaintiff was guilty of one third of the negligence, and you believe, under the evidence and the instructions which I give you, that the plaintiff would be entitled, otherwise than according to this rule, to a certain sum of money, that would be diminished one third, according to the one third negligence attributable to her." It is contended that this charge was erroneous because "it authorized the plaintiff, in case the jury believed that she was guilty of contributory negligence, to recover a greater proportion of the amount of damage sustained by her than is authorized by the law." It is further insisted that the "illustration given in said charge is a misleading illustration, and that the true law is that plaintiff, under the facts assumed in said illustration, could not under the law recover more than one third of the full amount of her damage, if so much, instead of two thirds, as stated in said illustration." The rule laid down in *Atkinson* v. *Bullard,* 14 *Ga. App.* 69, 71 (80 S. E. 220), that "under the State law the plaintiff could not recover if the negligence of the decedent was equal to or greater than that of the railroad company," is well-settled law in this State; and it was held in *Georgia Southern & Florida Ry. Co.* v. *Overstreet,* 17 *Ga. App.* 629 (4*b*) (87 S. E. 909), that it was error to refuse a request to charge as follows: "I charge you that if you believe the defendant was negligent, and the deceased was equally negligent, then the plaintiff could not recover at all." In *Central Railroad &c. Co.* v. *Newman,* 94 *Ga.* 560 (21 S. E. 219), the court held that "there can be no recovery unless the servant was less in fault than the defendant." See also *Southern Ry. Co.* v. *Watson,* 104 *Ga.* 243 (30 S. E. 818). In the case of *Brunswick &c. Railroad Co.* v. *Wiggins,* 113 *Ga.* 842 (39 S. E. 551, 61 L. R. A. 513), the rule is discussed and several cases collected in which it is clearly recognized. There was apparently no request to instruct the jury as to

this well-settled rule in this particular case, nor is there any exception because the court did not give this rule to the jury in so many words, and it is referred to at such length only in view of the contention of counsel for the plaintiff in error, which they insist is supported thereby or by logical deductions to be drawn therefrom.

It is suggested in the brief of counsel for the plaintiff in error that the illustration used by the court instructed the jury "that a contribution by the plaintiff of one third the total negligence would authorize a reduction of only one third the total damage sustained." And it is contended by them in their brief that if "a contribution of one half of the total negligence takes away all the damages, then a contribution of one third of the total negligence takes away a great deal more than one third the total damages." In the instruction given, the court distinctly recognized the rule above referred to, that if the negligence of the plaintiff was equal to or exceeded that of the defendant, the plaintiff could not recover; for in the illustration presented the learned judge said, "If you believe that the defendant's agents were guilty of two thirds of the negligence and the plaintiff was guilty of one third [*a degree or amount less than one half*] of the negligence, and you believe, under the evidence and the instructions which I give you, that the plaintiff would be entitled, otherwise than according to this rule, to a certain sum of money, that would be diminished one third, according to the one third negligence attributable to her."

Under the rule above referred to, if the negligence of the plaintiff equals or exceeds that of the defendant, or, in other words, if one half or more of the negligence which produces the injury is attributable to the plaintiff and the other one half or remainder to the defendant, there can be no recovery. That is to say, if the negligence of the defendant company was not greater than that of the plaintiff, there could be no recovery. If, however, the jury should find, under testimony sufficient to authorize such a finding, that the negligence of the defendant exceeded that of the plaintiff, a recovery for the full amount of the damage sustained would be authorized, subject only to the reduction provided for by section 2781. That section distinctly and plainly declares that in cases where the plaintiff is entitled to recover at all (where, for instance, the negligence of the plaintiff does not exceed the negligence of

the defendant), the plaintiff may recover notwithstanding the plaintiff is partly at fault, but the amount of damages to be assessed by the jury shall be diminished *in proportion* "to the amount of default attributable to the plaintiff." So it is clear that this section, when taken in connection with the rule so well settled by the decisions of the Supreme Court and this court that no recovery can be had where the negligence of the plaintiff equals that of the defendant, must be construed to mean that where the jury find that the negligence of the plaintiff does not equal or exceed the negligence of the defendant, a recovery may be had in favor of the plaintiff, notwithstanding the fault attributable to him, but the jury shall diminish the total amount of damages shown in *proportion* to the amount of default found against him. Thus, if the injury resulted from negligence, two thirds of which was chargeable to the defendant and only one third to the plaintiff, the jury should find, in the event a recovery was otherwise authorized, a verdict in favor of the plaintiff for the full amount of the damage shown by the evidence to have been inflicted upon him, less an amount deducted therefrom which shall be "in proportion to the amount of default attributable to him." In the illustration used by the court the entire default, or the entire negligence which produced the injury complained of, would be *three* thirds; and if the plaintiff furnished *one* third only of the negligence which brought about the result for which she sued, her recovery (if otherwise authorized) should undoubtedly be diminished by one third of that amount which the jury found expressed the total amount of the damage sustained by her, when measured in dollars and cents, for this deduction would clearly be *in proportion* to the plaintiff's negligence. If the injury was caused by certain negligence, one third of which was attributable to the fault of the plaintiff and two thirds to the fault of the defendant, the plaintiff should not be allowed to recover from the defendant for that portion of the negligence which the plaintiff contributed, but only for that portion of the total negligence contributed by the defendant. The rule allowing no recovery where the negligence of the one equals that of the other is clearly founded upon reason; but where the negligence of the defendant exceeds that of the plaintiff, and liability is thus shown on the part of the defendant to the plaintiff, it then merely becomes a matter of calculation for the jury to determine how

464 GEORGIA RAILWAY &c. CO. v. BELOTE. [20 Ga.

much fault could be attributable to the plaintiff (less than one half of the total negligence), and to deduct that amount from the total damage suffered by the plaintiff, and return a verdict for the balance. As we see it, section 2781 can only thus be rationally interpreted in connection with the general rule preventing any recovery unless the fault attributable to the plaintiff be less than that attributable to the defendant; and we do not think there is any merit in this ground of the motion for a new trial.

The 5th ground of the amendment to the motion for a new trial takes exception to an excerpt from the charge of the court, which referred to the allegations in the petition of the plaintiff as to the permanency of her injuries; and it is urged that there was no evidence to authorize the submission to the jury of the question of permanent injuries or of permanent pain and suffering from injuries. Not only does the plaintiff's petition allege permanent injuries, but she testified: "It was about a year afterwards before I could wear any shoe. I have trouble with that limb now; sometimes it is weak now, I can hardly stand up on it and bear my weight on it; it hurts me a good deal." Again she said: "I am nervous all the time since this happened. Yes, sir, Mr. Conyers [of counsel for defendant] made me nervous just awhile ago on the cross-examination." The sister of the plaintiff testified: "I have been with her [the plaintiff] since then. She is very nervous now." The physician who attended the plaintiff likewise testified as to the nature of her injuries immediately after the collision with the street-car, and said that she was apparently suffering at the time; that he had visited her twice a day for a month or more thereafter, and she was in bed all of the time, "was suffering from her bruises, and she was unable to bear her weight on her feet, and she had a little fever. The sciatic nerve seemed to be bruised, or was bruised. . . The effect of a bruise or injury of the sciatic nerve extends to the whole nervous system; causes such intense agony that the whole system will respond to it." He likewise said that some time after the injury he found the right limb of the plaintiff "somewhat shrunken up; it was not as large at that time as the other limb. That would indicate from my standpoint that there was a reflex of the condition of that nerve—from the effect on that nerve." The trial was had on the 13th day of April, 1916, and this physician further testified that he found the plaintiff in

the condition last mentioned in October preceding said trial, and "that she suffered pain; there was reason for her to suffer pain, but not so much as she had before. At the time that I examined her last October, I would say that standing on that limb a great deal, or walking a great deal on it, would cause her to feel it considerably, and it would affect her sleeping at night just in proportion as she would exercise or put strain upon it. . . . I examined her one day last week . . and found the limb improved. . . There wasn't as much of that dead, numb feeling as there was before; there had been a numbness or deadened feeling in the limb before, in the sensitiveness to touch, as compared with the other one." He further testified that it was impossible, from his experience, to know whether the trouble would return or not, but "it is possible for it to return at any time. I don't know whether the injury is permanent or not. I don't know but what it might return at any time; it may be permanent or it may not." From all of the above it is evident that there was testimony sufficient to authorize a charge touching permanent injuries, and, as already stated, the plaintiff's petition clearly alleged that her injuries were permanent.

There is no merit in any of the remaining grounds of the motion for a new trial. Ground 6, which complains that an excerpt from the charge is "obscure and misleading, and had a tendency to induce the jury to find permanent injury to plaintiff without legal evidence upon which to base such finding," is without merit. Ground 7 complains that the court erred in excluding the question, "Did Mr. Turner [meaning the motorman of the car] stop that car slow or quick when these young ladies stepped on the track?" and the answer of the witness, "Quick." This testimony was objected to on the ground that it amounted merely to a conclusion of the witness; and it was excluded for that reason. This witness testified that the plaintiff was within "about three or four feet, I reckon, of my car when I discovered them [the plaintiff and her sister], and I threw on my brake *as quick as I could* [italics ours] to keep from hitting them. . . . My car ran something like two or three feet, in my judgment, after that happened. . . Yes, I had my car under thorough control, and I stopped it as quick as the brakes would apply to the wheels. . . I stopped the car as quick as I could when I saw them right at the crossing." It is ap-

30

parent that, aside from the question whether the testimony rejected by the court was admissible or not, the defendant succeeded in getting before the jury, from the same witness, the identical testimony which this question would have elicited from him. It would seem, where a witness is able to give a more precise and definite statement (as was the witness in this case) as to the length of time that was required to do a particular thing, that the court should exact from the witness precise statements, rather than mere conclusions expressed in terms that are purely relative and indefinite, vague, and uncertain, depending altogether upon the opinion of the person using them as to their correctness, such as "quick" or "slow." See Civil Code (1910), § 5874. At all events it does not appear that there was possible harm to the defendant from the exclusion of this testimony.

The court did not err in declining to give to the jury the following charge requested in writing: "If the plaintiff's injury was the result of an accident, the jury should find for the defendant." The theory of accident was not involved under the pleadings or the evidence, for the plaintiff contended that the injury resulted from the negligence of the defendant, and the defendant insisted that it arose from the negligence of the plaintiff; and these contentions formed the issue submitted to the jury by the court. Again, the brief instruction requested, without the addition of some further instruction, as to what might in law constitute an "accident" that would relieve the defendant from liability, tended to mislead or confuse the jury, since, to the mind of the average man not learned in the law, the term "accident" includes all occurrences not the result of intention; the charge of the court sufficiently presented the issues in the case to the jury, and therefore the court did not err in declining this request.

In view of the full and fair charge given by the court as to the effect of failure on the part of the plaintiff to exercise ordinary care, and the general instructions touching all the issues of the case, so amply covered by the charge as delivered, there was no error in declining to instruct the jury, as requested, that "the precise thing which every person is bound to do before stepping upon a railroad track is that which every prudent man would do under like circumstances."

The case appears to have been fairly tried under the recognized

rules of law, and there was sufficient evidence to sustain the verdict; and, the verdict having been approved by the trial judge, no reason exists why this court should set it aside.

> *Judgment affirmed.   George and Luke, JJ., concur.*